FILED
2022 Apr-19  AM 10:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**C & H MANAGEMENT GROUP, LLC, *et al.*,**
      Plaintiffs,

**v.**

**JEROME DELUCCIO, *et al.*,**
      Defendants.

**Case No. 4:19-cv-1066-CLM**

## <u>MEMORANDUM OPINION</u>

The parties were in business together until their relationship went south. So they sued each other. Now that discovery has closed, both sides have moved for summary judgment. As explained within, the court rules on the pending motions as follows:

- The court will **GRANT in PART and DENY in PART** the Defendants' motion for summary judgment on the Plaintiffs' claims (doc. 120).

- The court will **DENY** the Plaintiffs'/Counterclaim Defendants' motion for summary judgment on Enhancedcare's counterclaim (doc. 124).

- The court will **DENY as MOOT** the Plaintiffs' motion to exclude the testimony of Tim Kennedy (doc. 123).

Subject to some claim-specific limitations outlined below, the parties should be ready to try all surviving claims to the bench starting May 31, 2022.

## BACKGROUND

Because the parties will try their cases to the bench, the court will write detailed findings of fact in its post-trial opinion. So the court only summarizes the case here.

### A. The Agent-Broker Relationship

Plaintiff C&H Management Group LLC began providing self-insured group wellness and limited medical plans and related services in 2017. C&H conducted this business under the name Attentive Health & Wellness. C&H later decided to break Attentive off from C&H and thus created Attentive Health & Wellness LLC. To help the reader, the court will call C&H Management Group LLC "C&H—Attentive" and the collective Plaintiffs "the Attentive parties."

In Spring 2017, C&H—Attentive decided to broaden its client base beyond Alabama. Defendant Enhancedcare, Inc. marketed, sold, and operated wellness plans nationwide. So the parties signed two agreements in June 2017:

1. The Agent/Broker Sales Agreement, which governed the parties' relationship; and,
2. The Confidentiality, Non-Competition and Non-Disclosure Agreement ("NDA"), which governed the titular topics.

(Docs. 21-1, 21-2). Generally, Enhancedcare agreed to market C&H—Attentive's wellness program to client employers and their employees and not to compete against C&H—Attentive or reveal C&H—Attentive's confidential information or trade secrets. In return, C&H—Attentive agreed to pay Enhancedcare a set per-month rate of $40 "on all lives sold" plus a percentage of product sales as commission. (Doc. 21-1 at 8).

## B. The SAAS-related Agreements

The parties use software platforms to market, sell, and operate wellness plans. Enhancedcare upgraded its platform in 2018, which led the parties to sign two agreements on August 1, 2018:

1. The Software as a Service (SAAS) Partner Agreement, and
2. An addendum to the 2017 Agent/Broker Sales Agreement.

(Docs. 21-5, 21-4 respectively). Generally, the SAAS Partner Agreement required Enhancedcare to make its new software program available to C&H—Attentive's customers, and in return, C&H—Attentive had to use reasonable efforts to represent and sell Enhancedcare's services while refraining from denigrating Enhancedcare or discouraging clients from using Enhancedcare. The addendum to the Sales Agreement changed Enhancedcare's per-month rate and its percentage of the commission.

## C. The Breakup

All parties point to January 1, 2019 as a key date in the breakdown of their relationship. But, as in most breakups, they don't see eye-to-eye about the cause and they place blame on their exes.

Generally, Enhancedcare says that Attentive LLC started flirting with a different platform provider (USHC) in late 2018 and started ushering its clients over to its new beau. Then, Attentive LLC stopped paying Enhancedcare the requisite per-month fees on January 1, 2019, without terminating the parties' Sales Agreement.

Attentive LLC says that its relationship with Enhancedcare wasn't exclusive, and it left Enhancedcare because USHC was a more attractive platform. The real problem, according to Attentive, is that on January 1, 2019, Enhancedcare started playing the field as a wellness program provider (not just a broker)—using information and documents it took from Attentive to lure away Attentive's clients.

So the parties sued each other.

## STANDARD OF REVIEW

In considering cross-motions for summary judgment, the court views the facts "in the light most favorable to the non-moving party on each motion." *See Chavez v. Mercantil Commercebank, N.A.*, 701 F.3d 896, 899 (11th Cir. 2012). Summary judgment is appropriate when there is no genuine dispute of material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## ANALYSIS

### A. Motion to Exclude (doc. 123)

Before the court tackles the cross motions for summary judgment, the court addresses the Attentive parties' motion to exclude Tim Kennedy's expert testimony. (Doc. 123.) The court reviewed Kennedy's testimony and finds that its inclusion or exclusion does not affect the court's ruling on the motions for summary judgment. So the court denies the motion to strike as moot. (Doc. 123). The Attentive parties may make this argument in a pretrial motion in limine if Enhancedcare lists Kennedy on its witness list.

### B. Enhancedcare's Motion for Summary Judgment (doc. 120)

The court addresses the five remaining counts of the Attentive parties' amended complaint below. *See* (Doc. 53) (dismissing Count VI).

### Count I: Breach of Contract

In Count I, the Attentive parties claim that Enhancedcare breached both the Sales Agreement and the NDA. (Doc. 21 ¶¶ 26-35). Enhancedcare seeks summary judgment only so far as C&H—Attentive alleges that Enhancedcare breached the NDA. So the Attentive parties may present their claim that Enhancedcare violated the Sales Agreement at trial; although, for reasons that will be soon apparent, the court questions

whether C&H–Attentive has standing to raise that claim. But because Enhancedcare does not make that argument in its motion for summary judgment, the court will address it—meaning that the parties must address it—at trial and (if necessary) in post-trial motions.

### 1.  Does either plaintiff have standing?

Enhancedcare argues that neither C&H—Attentive nor Attentive LLC have standing to sue for a violation of the NDA.

The court agrees that C&H—Attentive lacks standing to enforce the NDA. C&H—Attentive transferred the entire health and wellness business to Attentive LLC in September 2018. *See Plaintiffs' Response to Undisputed Fact #7* (Doc. 142 at 8). As Plaintiffs put it, C&H—Attentive "went dark as to all of its wellness plan-related activities" at that time. *Id.* Because C&H—Attentive had no legally protected interest in Attentive LLC's wellness business when it alleges that Enhancedcare violated the NDA, C&H—Attentive lacks standing to raise the claim. *See State v. Prop. at 2018 Rainbow Drive known as Oasis*, 740 So. 2d 1025, 1027 (Ala. 1999) (emphasis in original) ("Standing . . . turns on 'whether the party has been injured in fact and whether the injury is to a *legally protected right*.'").

The court finds that a disputed question of fact—*i.e.*, whether C&H—Attentive assigned its rights under the NDA to Attentive LLC— will determine whether Attentive LLC has standing for Count I. Attentive LLC did not exist when C&H—Attentive signed the NDA, so it could not have been a party at the time. But under Alabama law, a corporation can assign its rights and interests in a contract to another corporation. *See generally Baker v. Eufaula Concrete Co.*, 557 So. 2d 1228 (Ala. 1990). That assignment may be oral or written. *Russell v. Birmingham Oxygen Serv., Inc.*, 408 So. 2d 90, 93 (Ala. 1981). But an assignor does not effectively assign its rights unless the assignor intentionally gives up all of its rights and interests, so those rights and interests belong exclusively to the assignee. *See Andalusia Motor Co. v. Mullins*, 183 So. 456, 459 (Ala. Ct. App. 1938); *United States v. Brooks*, No. 81-0210-H, 1982 WL 1609, at *4 (S.D. Ala. Mar. 15, 1982).

The parties dispute whether C&H—Attentive effectively assigned its rights to Attentive LLC. Determining an assignor's intent is a question of fact. *See Baker*, 557 So.2d at 1230. While the court agrees with Enhancedcare that there is conflicting testimony on the issue, the court finds that if the evidence is viewed in a light most favorable to Attentive LLC, the trier of fact could find a valid assignment. So the court denies summary judgment on this ground and moves on to other arguments for summary judgment against Attentive LLC.

### 2. Is the NDA void because it restricts trade?

Alabama's Restrictive Covenants Act provides that "[e]very contract by which anyone is restrained from exercising a lawful profession, trade, or business of any kind otherwise than is provided by this section is to that extent void." Ala. Code § 8-1-190(a). There are six exceptions, two of which are relevant here:

> (4) An agent, servant, or employee of a commercial entity may agree with such entity to refrain from carrying on or engaging in a similar business within a specified geographic area so long as the commercial entity carries on a like business therein, subject to reasonable restraints of time and place. Restraints of two years or less are presumed to be reasonable.

> (5) An agent, servant, or employee of a commercial entity may agree with such entity to refrain from soliciting current customers, so long as the commercial entity carries on a like business, subject to reasonable time restraints. Restraints of 18 months or for as long as post-separation consideration is paid for such agreement, whichever is greater, are presumed to be reasonable.

Ala. Code § 8-1-190(b)(4-5).

Enhancedcare argues that the NDA is void because it violates § 190(a)'s general prohibition and does not fall within any of § 190(b)'s six

exceptions—arguing that subsections (b)(4) and (b)(5) do not apply because Enhancedcare was an independent contractor, not "an agent, servant, or employee" of Attentive LLC. *Id.*

Attentive LLC responds that the exceptions don't matter because the Alabama Supreme Court has held that the Act only prohibits total restraints on trade, not "partial" ones. *See Ex parte Howell Eng'g & Surveying, Inc.*, 981 So. 2d 413, 422–23 n.4 (Ala. 2006). So, Attentive argues, the Act does not apply here because the NDA did not prohibit Enhancedcare from acting as a broker in the wellness program world; it just prohibited Enhancedcare from competing against Attentive or using Attentive's proprietary goods.

a. <u>Partial vs. Total Restraint</u>: The court finds that the 2006 *Howell* decision does not add a broad partial restraint exception to the Act. As Enhancedcare points out, the Alabama Legislature re-wrote the Act in 2015. When it did, the Legislature added two new exceptions to bless *some* 'no hire' and 'exclusive dealings' agreements:

> (1)  A contract between two or more persons or businesses or a person and a business limiting their ability to hire or employ the agent, servant, or employees of a party to the contract where the agent, servant, or employee holds a position uniquely essential to the management, organization, or service of the business.

> (2) An agreement between two or more persons or businesses or a person and a business to limit commercial dealings to each other.

Ala. Code § 8-1-190(b)(1-2). These additions (particularly the second) codified the *Howell* ruling, as noted in the comment to the section. And Attentive cites no state cases decided after the 2015 re-write that says there are more exceptions than the six written by the legislature in 2015.

Simply put, the Legislature knew what the Alabama Supreme Court had written when it re-wrote the statute and considered those

holdings. If the legislature had wanted to exempt *all* partial restraints from the Act's reach, it could have said so. But it didn't. It enumerated six exceptions, some of which come from the state court cases discussing partial restraints. This court must apply the statute as the Legislature wrote it. So the NDA is void under § 8-1-190 if it doesn't fit one of the six statutory exceptions.

     b. <u>Agency</u>: That leads us back to whether Enhancedcare was "an agent, servant, or employee of a commercial entity [Attentive LLC]," which triggers the (b)(4) and (b)(5) exceptions. Section II(C) of the Sales Agreement states, "Broker acknowledges that they are an independent contractor and this Agreement does not create a relationship of employer/employee, principal, agent or other similar relationship between [C&H—Attentive] and Broker." (Doc. 21-1, p. 3.) But even if a contract says that a party is an independent contractor, whether an agency relationship "exists is determined from the facts, not by how the parties choose to characterize their relationship." *Tyson Foods, Inc. v. Stevens*, 783 So. 2d 804, 808 (Ala. 2000) (citing *Curry v. Welborn Transp.,* 678 So.2d 158, 161 (Ala. Civ. App. 1996)). The essence of the relationship depends on who has the "right to control the means by which the work is done." *Keebler v. Glenwood Woodyard, Inc.*, 628 So.2d 566, 568 (Ala.1993); *see also Lifestar Response of Alabama, Inc. v. Admiral Ins. Co.*, 17 So. 3d 200, 213 (Ala. 2009) (citing *Alabama Power Co. v. Beam*, 472 So. 2d 619 (Ala. 1985)) ("The test for determining whether a person is an agent or employee of another, rather than an independent contractor, is whether that other person has reserved the right of control over the means and method by which the person's work will be performed, whether or not the right of control is actually exercised.").

     Whether Enhancedcare was an agent of Attentive LLC is a fact question. *Campbell v. Employers Ins. Co. of Ala.*, 521 So. 2d 924, 928 (Ala. 1998). A reasonable jurist could find an agency relationship if he views the parties' evidentiary submissions in a light most favorable to Attentive LLC. So the court denies summary judgment because Attentive could prove that one or more exceptions apply.

### 3. Is §2 ¶C of the NDA void because it lacks a time limit?

Again, an agreement not to solicit current customers is one of the six exceptions to the general rule against restrictive covenants:

> An agent, servant, or employee of a commercial entity may agree with such entity to refrain from soliciting current customers, so long as the commercial entity carries on a like business, ***subject to reasonable time restraints***. Restraints of 18 months or for as long as post-separation consideration is paid for such agreement, whichever is greater, are presumed to be reasonable.

Ala. Code § 8-1-190(b)(5) (emphasis added). The court emphasizes the "reasonable time restraint" requirement because, as Enhancedcare points out, the NDA's restriction on soliciting current customers lacks a time restraint:

> Receiving Party [Enhancedcare] further covenants not to utilize Disclosing Party's [C&H—Attentive's] customer list or call on or attempt to service any of Disclosing Party's [C&H—Attentive's] accounts.

(Doc. 21-2 p. 6.).

But the parties' failure to add a time restraint in this paragraph does not automatically void this covenant. Section 8-1-193 states that "[i]f a contractually specified restraint is overly broad or unreasonable in its duration, a court ***may*** void the restraint in part and reform it to preserve the protectable interest or interests." (emphasis added).

The parties agreed that "contact with . . . existing customers" was a "protectable interest." (Doc. 21-2, § 1(G)). And they defined "Restricted Period" to be 18 months. (Doc. 21-2, § 1(H)). So even though the covenant in ¶C does not define the restricted period for contacting current customers, it's fair and statutorily permissible to "reform [that paragraph] to preserve the protectable interest" by imposing the 18-month period that

governs other protectable interests. In fact, that's what the parties agreed should happen if the court found this provision invalid:

> The parties further agree that, in the event any court of competent jurisdiction shall find that any of the foregoing provisions is invalid or unenforceable, the invalid or unreasonable term shall be redefined, or a new enforceable term provided, such that the intent of the parties in agreeing to the provisions of this Agreement shall not be impaired and the provision in question shall be enforceable to the fullest extent of the applicable laws.

(Doc. 21-2 § 2(H)). An 18-month provision not only reflects the parties' intent, it is the time period the Alabama Legislature considers presumptively reasonable for restraints on the solicitation of current customers. *See* Ala. Code § 8-1-190(b)(5). So the court denies summary judgment based on the lack of a time limit in §2, ¶C.

### 4. Did the restrictive period begin?

The NDA defined the "restricted period" like this:

> Restricted period means that period beginning on the date of termination of this Agreement [the NDA] and ending on the eighteen[th] month after the termination of Receiving Party's Contract with Disclosing Party.

(Doc. 21-2, p. 5, § 1(H)). Enhancedcare argues that the parties never terminated the NDA, so the restricted period never started, so they cannot have violated any of the covenants subject to the 18-month restriction.

Enhancedcare bases this argument on poor drafting. Clearly, the parties did not intend for the 18-month restrictive period to begin ***after*** the parties terminated their covenant responsibilities. The parties intended that the covenants run 18 months after their business relationship ended—thus the phrase "ending on the eighteen[th] month after the termination of [the Sales Agreement]."

So the court denies summary judgment for two reasons. First, applying the NDA's text as it was [poorly] drafted, a reasonable jurist could find that the parties terminated the NDA sometime in April or May 2019 if he views the evidence in a light most favorable to Attentive LLC. Second, if the court applies the natural, plain, and ordinary meaning of the restrictive period, a reasonable jurist could find that the parties terminated their business relationship sometime in April or May 2019 if he views the evidence in a light most favorable to Attentive LLC.

### 5. Did Enhancedcare violate Covenant ¶B(a)?

One of the NDA covenants prohibited Enhancedcare from soliciting clients "who [were] made known during, or as a consequence of, the business relationship" between Enhancedcare and C&H—Attentive. (Doc. 21-2 §2 ¶B(a)). Enhancedcare argues that it could not have violated ¶B(a) because it brought all 11 of the named clients to the Attentive parties.

The Attentive parties do not dispute that they cannot prove a violation of ¶B(a). Instead, the Attentive parties argue that they can prove violations of the covenants made in ¶B(b) and ¶C. (Doc. 142 at 43-44).

So the court finds that the Attentive parties have abandoned any claim that Enhancedcare violated Covenant ¶B(a). But they may try to prove that Enhancedcare violated other covenants spelled out in the NDA.

### 6. Did Enhancedcare violate Covenant ¶F?

Finally, Enhancedcare argues that it did not violate the covenant found in Section 2, ¶F because "the plan documents and the 'Proposal Tool Calculator' are not trade secrets or confidential." (Doc. 121 at 48). The court has viewed the parties' evidentiary submissions and finds that a reasonable jurist could rule for the Attentive parties on this claim if he views the evidence in the light most favorable to the Attentive parties. So the court denies summary judgment.

**Count II: Tortious Interference**

Alabama law creates similar yet distinct torts of tortious interference with a business relationship and tortious interference with a contractual relationship. The Attentive parties plead both in Count II. (Doc. 21 ¶¶ 31-35). The court treats them separately below.

### 1. Contractual Relationship

Among other things, the Attentive parties have to prove that an enforceable contract exists to prove a claim for tortious interference with a contractual relationship. *White Sands Grp. v. PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009).

C&H—Attentive left the health and wellness plan business, and thus had no contractual relationships with Attentive LLC's customers before Enhancedcare allegedly tortiously interfered with those customers. So C&H—Attentive cannot raise a claim for tortious interference with a contractual relationship.[1]

Attentive LLC provided no evidence that it had an enforceable contract with Peer Place Networks, Taub Agency, Loch Harbour Group, or Novem Group. So Attentive's claims for tortious interference with a contractual relationship with those entities are summarily dismissed.

### 2. Non-contractual Business Relationship

The court now turns to Enhancedcare's alleged interference with non-contractual business relationships, starting with the argument that applies to all of Attentive LLC's named relationships.

a. <u>Stranger to all Relationships</u>: To prove a claim for intentional interference with business relations, a plaintiff must establish "(1) the existence of a protectable business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *White Sands Grp. v.*

---

[1] The court reaches the same conclusion, for the same reasons, about C&H–Attentive's inability to raise a claim for tortious interference with a business relationship.

*PRS II, LLC*, 32 So. 3d 5, 14 (Ala. 2009). Enhancedcare argues that it was not a "stranger" to any of Attentive LLC's business relationships, relying on the state supreme court's decision in *Waddell & Reed, Inc. v. United Investors Life Ins. Co.*:

> [A] defendant is not a 'stranger' to a contract or business relationship when: (1) the defendant is an essential entity to the purported injured relations; (2) the allegedly injured relations are inextricably a part of or dependent upon the defendant's contractual or business relations; (3) the defendant would benefit economically from the alleged injured relations; or (4) both the defendant and the plaintiff are parties to a comprehensive interwoven set of contracts or relations."
>
> . . .
>
> One cannot be guilty of interference with a contract . . . so long as one is a participant in a business relationship arising from interwoven contractual arrangements that include the contract.

875 So. 2d at 1156, 1157 (citations omitted); *see also Tom's Foods, Inc. v. Carn*, 896 So. 2d 443, 455 (Ala. 2004) (finding that the defendant was not "a stranger to the business relationship . . . [because w]ithout the relationship between [the defendant and the customer, the plaintiff] would have had no relationship with [the customer]").

Enhancedcare asserts that it was not a stranger to any of the customers listed by Attentive LLC because: (a) they recruited all of the customers (except Aquacare) and without their efforts, Attentive LLC would not have had business relationships or contracts with the customers; (b) Enhancedcare benefitted economically from Attentive LLC's contracts or business relations with the customers by collecting and sharing in a portion of the fees generated; and (c) Attentive LLC's relationships and contracts with the customers were interwoven with Enhancedcare's good relationships with and service to the customers.

Attentive LLC sees it differently. It claims that Enhancedcare was not only a stranger to Attentive LLC's relationships, it was a competitor, when it solicited Attentive LLC's customers. So Attentive LLC argues that Enhancedcare: (i) was not an essential entity to Attentive's wellness plan sales; (ii) was not inextricably part of or dependent upon Attentive LLC's sales; (iii) did not stand to benefit from Attentive LLC's sales (in fact, it stood to lose clients for its own plan); and (iv) was not, as a seller of its own wellness plan, a party to a comprehensive interwoven set of contracts. *See Waddell*, 875 So. 2d at 1157.

If a reasonable jurist views the evidence in the light most favorable to Attentive LLC, he could find that Enhancedcare was a stranger to Attentive LLC's relationships when Enhancedcare interfered with those relationships. So the court denies summary judgment on this ground.

b. <u>Mass Mutual</u>: "[A] business does not have a protectable business relationship with every potential customer." *ICON Health & Fitness, Inc. v. Davis*, 2020 WL 2332187, at *5 (N.D. Ala. May 11, 2020). Enhancedcare argues that Attentive LLC did not have a protectable business relationship with potential customer Mass Mutual because Attentive LLC did not try to establish a business relationship with Mass Mutual. Instead, Enhancedcare says that it contacted Mass Mutual and cultivated a relationship with Mass Mutual.

Attentive LLC counters that it tasked Enhancedcare with marketing Attentive's wellness plan and with establishing relationships with prospective clients, including Mass Mutual. The court finds that a reasonable jurist viewing the evidence in a light most favorable to Attentive LLC could agree, so it denies summary judgment as it pertains to Mass Mutual.

c. <u>Aquacare</u>: The court reaches the opposite conclusion for Aquacare. Alabama law requires that the alleged interference be "the 'proximate cause' – and not just the 'remote cause'" of the alleged damages. *UFCW Union, Employers Health & Welfare Fund v. Philip*

*Morris, Inc.*, 223 F.3d 1271, 1273 (11th Cir. 2000). Even viewing the evidence in a light most favorable to Attentive LLC, Aquacare's decision not to renew its contract with Attentive LLC was due to poor customer service, not interference from Enhancedcare. (Doc. 121, p. 16–17, ¶ 39–41.) So the court grants summary judgment on Count II as it pertains to Aquacare because Enhancedcare did not proximately cause Attentive LLC's alleged damages.

### Count III: Misappropriation of Trade Secrets

The Attentive parties allege in Count III that Enhancedcare misappropriated certain trade secrets that make up the Attentive model. (Doc. 21 ¶¶ 36-41). To prove that these are trade secrets, the Attentive parties must show that the information:

  a. Is used or intended for use in a trade or business;
  b. Is included or embodied in a formula, pattern, compilation, computer software, drawing, device, method, technique, or process;
  c. Is not publicly known and is not generally known in the trade or business of the person asserting that it is a trade secret;
  d. Cannot be readily ascertained or derived from publicly available information;
  e. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy; and,
  f. Has significant economic value.

Ala. Code § 8-27-2(1). Enhancedcare argues that the Attentive parties cannot prove each of these elements for the Attentive plan documents and proposal calculation tool. The court has reviewed the parties' evidentiary submissions and finds that, when they are viewed in a light most favorable to the plaintiffs, the Attentive parties could prove their claim. Because the court will soon hear this evidence, judge credibility, and then make detailed fact findings, it only briefly touches on some of Enhancedcare's fact-based arguments.

### 1. Plan Documents

Enhancedcare argues that the Attentive parties' plan documents cannot be trade secrets because C&H—Attentive used information from the public domain to create them. *See Ex parte Industrial Warehouse Servs., Inc.,* 262 So. 3d 1180, 1186–87 (Ala. 2018) (holding that certain "operations and safety manuals" for commercial drivers were not trade secrets because the manuals were derived from and referenced "regulations applicable to the entire trucking industry" and "codes and regulations which are uniform throughout the United States and common in the trucking industry"). The Attentive parties agree that they used some publicly available information to create their program, but that information is not the trade secret. Rather, it's the "unique combination of that information" that the Attentive parties created. *See Penalty Kick Mgmt. v. Coca Cola Co.*, 318 F.3d 1284, 1291 (11th Cir. 2003). If the Attentive parties can prove a unique combination at trial, then it could prove a trade secret.

Enhancedcare also argues that the Attentive parties' plan documents cannot be trade secrets because the Attentive parties told customers and the public about how the Attentive program worked and did not try to keep that information secret. *See Allied Supply Co. v. Brown*, 585 So. 2d 33, 36 (Ala. 1991). The Attentive parties agree that they showed parts of their program to the public but maintain that the Attentive Model as a whole was unavailable to the public. If the Attentive parties can prove that, then they could prove a trade secret.

Finally, Enhancedcare says that the Attentive parties have no evidence that Enhancedcare took the plan documents or used them verbatim, so the Attentive parties cannot prove misappropriation. But the Attentive parties have provided evidence of markers that—if viewed in a light most favorable to the Attentive parties—could allow a reasonable factfinder to say that Enhancedcare copied and pasted portions of the Attentive parties' plan documents.

### 2. Proposal Calculation Tool

Enhancedcare argues that the Attentive parties' Proposal Calculation Tool is not a trade secret because it's simply an Excel Spreadsheet that spits out calculations based on publicly available information. *See Pub. Systems, Inc. v. Towry*, 587 So.2d 969, 971–73 (Ala.1991). The Attentive parties counter that they created the formulas within Excel, used W-4 information in the calculations, and took reasonable efforts to protect the formulas and individual data. The court finds this creates a triable fact question.

The court also finds that David Coffey's possession of the password and his access to the Attentive Calculation Tool/Formula creates a triable question of fact whether Enhancedcare or Coffey misappropriated the Proposal Calculation Tool. But the Attentive parties offer no evidence that Defendant Jerome DeLuccio had access to the formula or ever saw its information. So the court grants summary judgment for DeLuccio, limited to the claim that he misappropriated the Proposal Calculation tool.

## Count IV: Conversion

In Count IV, the Attentive parties allege that Enhancedcare took their plan documents and processes and used them for profit. (Doc. 21 ¶¶ 42-46). Enhancedcare argues that this conversion claim is preempted by the Copyright Act and is insufficient on the merits.

As for preemption, Section 301(a) of the Copyright Act preempts "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103." 17 U.S.C. § 301(a). Under the statute, a state-law claim is preempted when: (1) "the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103"; and (2) the "rights at issue are 'equivalent to' the exclusive rights of section 106." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d 1285, 1293–94 (11th Cir. 2004).

The Attentive parties argue that the Proposal Calculation Tool portion of its conversion claim is not preempted because the Attentive parties did not copyright the Proposal Calculation Tool. The court agrees. And the court finds that this part of the claim survives summary judgment because a reasonable jurist that views the evidence in a light most favorable to the Attentive parties could find conversion.

But the court finds that the plan documents fall within the subject matter of copyright, even if the documents lack the originality "necessary to come within the protection of the Act." *Dunlap v. G&L Holding Grp., Inc.*, 381 F.3d at 1297. So the court will grant summary judgment on the claim that Enhancedcare converted the plan documents.

## Count V: Copyright Infringement

Attentive LLC has copyrights on three documents. (Doc. 21-3). In Count V, Attentive LLC alleges that Enhancedcare infringed on its copyrights by distributing, selling, or otherwise using infringing materials without Attentive LLC's authorization.[2]

Enhancedcare argues that this claim fails because the copyrighted documents are not original works of authorship; Attentive LLC copied them from preexisting forms, laws, and regulations in the public domain. *See* 17 U.S.C. § 102(a). Even though Attentive LLC derived portions of the works from previous works—including works in the public domain—the court finds that there is a genuine issue of material fact about the extent of originality Attentive LLC infused into its documents. So the court denies summary judgment on Count V.

—

[2] C&H–Attentive lacks standing to raise a copyright claim because C&H–Attentive is not listed as an author or owner of the copyrights or that it obtained registration of the works from the copyright office. *See Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 139 S. Ct. 881, 887, 891–92 (2019). But the court needn't grant summary judgment against C&H–Attentive because Count V is pleaded only on Attentive LLC's behalf. (Doc. 21 ¶¶ 47-56).

To sum up, Attentive LLC may try Counts I–V with the limits described above. But the court doubts that C&H–Attentive has standing to pursue any of the claims. C&H–Attentive must prove otherwise before the court addresses the merits. *See Dillard v. Baldwin Co. Comm'rs*, 225 F.3d 1271, 1275 (11th Cir. 2000).

## C. The Attentive Parties' Motion for Summary Judgment (doc. 124)

Enhancedcare filed claims in two places. First, Enhancedcare filed a complaint in New York state court, which was ultimately moved to this court. (Docs 70-71). Then Enhancedcare put a counterclaim in its answer to the Attentive parties' Amended Complaint here. (Doc. 25). Between these documents, Enhancedcare asserts these claims:

- C&H–Attentive or Attentive LLC (or both) violated § 2.6(a) of the SAAS Partner Agreement by failing to make commercially reasonable efforts to promote Enhancedcare's product.
- C&H–Attentive or Attentive LLC (or both) violated § 2.6(a) of the SAAS Partner Agreement by discouraging and prohibiting clients from using Enhancedcare's services.
- C&H–Attentive or Attentive LLC (or both) violated the August 2018 Addendum to the Sales Agreement by failing to pay the $28 per-month fee for new customers that were recruited by non-Enhancedcare brokers and placed on the USHC platform.
- C&H–Attentive or Attentive LLC (or both) violated the August 2018 Addendum to the Sales Agreement by failing to pay the $34 per-month fee for new customers that were recruited by non-Enhancedcare brokers and placed on the Enhancedcare SAAS platform.

The parties agree that the SAAS Partner Agreement and August 2018 Addendum should be read compatibly because both relate to the same matter and were signed on the same day. But as you might expect, the parties read those documents differently. The court starts by reviewing the claims alleging a violation of the SAAS Partner Agreement.

## 1. The SAAS Partner Agreement

Enhancedcare claims that, when the Attentive parties started steering customers from Enhancedcare to USHC, they breached each of the first two provisions of § 2.6, which reads in relevant part:

> **AHW Obligations**. AHW will (a) use commercially reasonable efforts to represent and sell the Service as part of their comprehensive Wellness Solution and the EcMD Services into the market; (b) not defame, denigrate or otherwise discourage Clients and potential Clients in any manner regarding the Service and the EcMD Services[.]

(Doc. 21-5 at 4).

a. <u>Discretion</u>: The Attentive parties argue that they cannot be liable for sending customers to USHC because, in the Addendum—which the parties agree should be read compatibly with the SAAS Partner Agreement—the parties "agree[d] to partner using the enhancedcareMD suite of services as the operating standard for the Attentive plan nationally and move to the new software as a service (SAAS) solution for named segments of the solution on a ***case-by-case basis***." (Doc. 21-4, p. 3) (emphasis added).

The court agrees, in part. Read plainly, the Addendum's use of the phrase "case-by-case basis" gave the Attentive parties the right to place new customers on an alternative platform. But that discretion didn't eliminate the Attentive parties' responsibility to use reasonable efforts to sell Enhancedcare's product into the market, nor did it allow the Attentive parties to disparage Enhancedcare or to tell brokers not to sell the

Enhancedcare product. To hold otherwise not only contradicts the plain language of § 2.6(a-b), it would render those provisions meaningless.

Enhancedcare offers enough evidence that the Attentive parties violated §§ 2.6(a) and (b) to preclude summary judgment.

b. Unreasonable: The Attentive parties also argue that, no matter what §2.6(a) says, the Attentive parties did not have to market Enhancedcare's platform once USHC added new features to its platform and provided its services at a lower cost than Enhancedcare. To support this argument, the Attentive parties rely on *Holland Loader Co., LLC v. FLSmidth A/S*, 313 F. Supp. 3d 447, 473 (S.D.N.Y. 2018), *aff'd*, 769 F. App'x 40 (2d Cir. 2019) ("[C]ompliance with a 'commercially reasonable efforts' clause requires at the very least some conscious exertion to accomplish the agreed goal, but something less than a degree of efforts that jeopardizes one's business interests."). Attentive asserts that it is entitled to summary judgment because paying more to use Enhancedcare's platform was against its business interests.

The court disagrees. For starters, like the defendant in *Holland*, the Attentive parties offer "no evidence that compliance with [their] contractual obligations would have crippled [them] or otherwise caused [them] financial hardship." *Id.* There is a difference between efforts that cost more money versus efforts that "jeopardize" the business. *Id.*

More importantly, the court finds that there are material questions of fact about: (1) whether Attentive complied with its obligation to use commercially reasonable efforts to represent and sell Enhancedcare's services into the market; and (2) whether Attentive complied with its obligation to avoid discouraging clients or potential clients from using Enhancedcare's platform and services. At best, proving that USHC was better and cheaper may factor into how the court answers these questions. But such proof does not relieve the court of its responsibility to answer the questions.

### 2.  Addendum to Schedule A of the Sales Agreement

The Addendum changed the per-month fee structure as follows:

> On new accounts sold by the non enhancedcareMD network in its current form (without the SAAS solution), enhancedcareMD will receive $28 pepm [per employee per month] through the agreed ACH process stated in the revised MSA and $32 pepm for all AHW MEC clients and $34 pepm for all non MEC clients that include the new software and services (SAAS).

> In non MEC sales using the new SAAS solution enhancedcareMD will be compensated at a rate of $46.00 per month per employee (pepm) on all lives sold by enhancedcareMD's internal staff sales persons and $34 for sales from all external assigned sales staff.

Doc. 21-4 at 3. Enhancedcare reads this structure to require Attentive to pay Enhancedcare $28 per month for clients found by other brokers and put on non-Enhancedcare platforms; $34 per month for clients found by other brokers and put on Enhancedcare platforms; and $46 per month for clients placed by Enhancedcare brokers on Enhancedcare platforms. Enhancedcare claims that Attentive stopped paying it for the $28 and $34 customers. The court addresses the Attentive Parties' reading below.

a. <u>Discretion</u>: The Attentive Parties again argue that their discretion to use other vendors' platforms bars a breach of contract claim. The court again finds that the Addendum's use of the phrase "case-by-case" gave the Attentive parties discretion to place customers on other companies' platforms. But having discretion to place customers on a particular platform doesn't eliminate the Attentive parties' obligation to pay fees for those customers to Enhancedcare if the Addendum requires the fees. That's where consideration comes in.

b.  <u>Consideration</u>: The Attentive parties argue that the Addendum cannot be read to require the Attentive parties to pay the $28 and $34 fees because Enhancedcare had done nothing for those customers—*i.e.*, non-Enhancedcare brokers found the customers and put on USHC's platform. That ruling would, it seems, render the $28 and $34 fees meaningless.

Enhancedcare counters that it was not being paid based solely on its client-based work; Enhancedcare was being paid for the services required by the Addendum's "Operations" provision. That provision required Enhancedcare, among other things:

- to deliver the SAAS model to Attentive by a certain date;
- to collaborate with Attentive LLC "in continuing process development";
- to collaborate with Attentive LLC in "creating and executing a selling and marketing strategy including a library of materials to share nationally;" and,
- to share marketing and sales documents "to create one library for Regional and Independent Brokers to access for their use."

(Doc. 21-4 at 3).

"Conflicting evidence as to whether the consideration was adequate creates a question of fact to be determined by the trier of fact." *Files v. Schaible*, 445 So. 2d 257, 260 (Ala. 1984). A reasonable jurist viewing the evidence in a light most favorable to Enhancedcare could find that Enhancedcare provided the requisite consideration. So the court denies summary judgment and will allow Enhancedcare to raise both claims stemming from the Addendum pay schedule.

## CONCLUSION

The Court **grants** Enhancedcare's motion for summary judgment (doc. 120) only to this extent:

- <u>Count I</u>: The court dismisses without prejudice C&H—Attentive's claims that Defendants violated the NDA.
- <u>Count II</u>: The court dismisses without prejudice all claims raised by C&H—Attentive.
- <u>Count II</u>: The court dismisses with prejudice Attentive LLC's claim that Defendants tortiously interfered with Attentive LLC's contracts with Aquacare, Loch Harbour Group, Novem Group, Peer Place Networks, and Taub Agency.
- <u>Count II</u>: The court dismisses with prejudice Attentive LLC's claim that Defendants tortiously interfered with Attentive LLC's business relationship with Aquacare,
- <u>Count III</u>: The court dismisses with prejudice the Attentive parties' claim that Jerome DeLuccio misappropriated the Proposal Calculation tool.
- <u>Count IV</u>: The court dismisses with prejudice the Attentive parties' claim that Defendants converted the plan documents.

Plaintiffs may try all other counts, although C&H—Attentive must show that it has standing to raise any of its remaining claims.

The court **denies** the Attentive parties' motion to dismiss Enhancedcare's counterclaims (doc. 124) and **denies as moot** their motion to exclude the testimony of Tim Kennedy (doc. 123).

The court will enter a separate order consistent with this memorandum opinion.

**DONE** on April 18, 2022.

**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE